## KRIETMEYER v. BALDWIN DRAINAGE DIST. (BROWN, Intervener.)

(District Court, S. D. Florida. June 25, 1926.)

No. 309.

Drains ⟲18—Lien of bonds issued by drainage district held not affected by additional bonds issued under amendment to statute (Laws Fla. 1913, c. 6458, and section 46, thereof, as amended by Acts Fla. 1917, c. 7309).

Bonds issued by a drainage district under Laws Fla. 1913, c. 6458, which under the statute became a lien on the benefited lands in the district, cannot be displaced as a first lien by additional bonds authorized by and issued under section 46, as amended by Acts Fla. 1917, c. 7309, and coupons of the first issue are entitled to priority of payment over those from bonds of subsequent issues.

In Equity. Suit by Louis H. Krietmeyer against the Baldwin Drainage District; Warren E. Brown, intervener. On application of receiver for instructions as to payment of interest coupons.

For former opinion, see 298 F. 604.

Giles J. Patterson, of Jacksonville, Fla., for plaintiff.

Cooper, Cooper & Osborne, and J. Turner Butler, all of Jacksonville, Fla., for receiver.

G. W. L. Smith, of Brewton, Ala., for intervener.

CALL, District Judge. This cause comes on for a further hearing upon the application of the receiver for instruction in the payment of past due interest coupons on the bonds issued by the drainage district and the application of Warren E. Brown, representing the past-due interest coupons on the drainage bonds first issued.

It is contended by the applicant, Brown, that the interest coupons due on the first issue of bonds should be first paid. The holders of interest coupons on the bonds subsequently issued contend that the payments should be pro rata, in the event that the money in the hands of the receiver is not sufficient to satisfy all the past-due interest coupons on all the bonds issued, without distinction as to the date of issue.

The decision of this question must be based upon the question whether there is priority of lien upon the lands contained in the drainage district. To ascertain whether the lien of the bonds is uniform, without reference to the time of issue, must be decided by a construction of the statute authorizing the formation of the drainage district and empowering the supervisors to issue bonds to acquire the means of constructing drains, etc. The law under which the drainage district was formed is chapter 6458 of the Laws of Florida of 1913, as amended by chapter 7309, Laws of 1917—paragraphs 1098 to 1159 of the Revised General Statutes as amended in 1917.

January 1, 1917, the board of supervisors issued, under the authority of section 41 of the act of 1913, bonds of the aggregate value of $300,000. These bonds were validated under the statutes of the state. Subsequently, on October 1, 1919, pursuant to authority granted the board of supervisors by chapter 7309 of the Laws of 1917, amending section 46 of the original act, the board issued additional bonds of the aggregate value of $150,000. On July 1, 1922, the board of supervisors issued additional bonds of the aggregate value of $110,000.

Interest coupons on each series of these bonds are now past due. The moneys in the receiver's hands were derived from taxes assessed upon the lands in the drainage district by the board of supervisors for the payment of interest on the bonds issued. Have the holders of the first issue of bonds a right to have their past-due interest coupons first satisfied—in other words, have the holders of these first bonds a lien prior in dignity to the lien of the holders of subsequent issues?

Section 9 of the original act provides for a plan of reclamation, and subsequent sections provide the method of assessing benefits, damages, etc., and the adoption of same. Section 17 empowers the supervisors to levy

a "tax of such portion of said benefits on all lands in the district to which benefits have been assessed as may be found necessary by the board of supervisors to pay the costs of the completion of the proposed works and improvements as shown in said 'plan of reclamation' and * * * ten per cent. of said total amount for emergencies. * * * In case bonds are issued, * * * the interest * * * which will accrue on said bonds shall be included" in "said tax."

Section 41 authorizes the issue of bonds and is as follows: "The board of supervisors may, if in their judgment it seems best, issue bonds not to exceed ninety per cent. of the total amount of the taxes levied under the provisions of section 17 of this act, in denominations of not less than one hundred dollars, bearing interest from date at a rate not to exceed six per cent. per annum, payable semi-annually, to mature at annual intervals within thirty years, commencing after a period of years not later than ten years, to be determined by the board of supervisors, both principal and interest payable at some convenient banking house or trust company's office to be named in said bonds, which said bonds shall be signed by the president of the board of supervisors, attested with the seal of said district and by the signature of the secretary of the said board. All of said bonds shall be executed and delivered to the treasurer of said district, who shall sell the same in such quantities and at such dates as the board of supervisors may deem necessary to meet the payments for the works and improvements in the district. Said bonds shall not be sold for less than ninety-five cents on the dollar, with accrued interest, shall show on their face the purpose for which they are issued, and shall be payable out of money derived from the aforesaid taxes. A sufficient amount of the drainage tax shall be appropriated by the board of supervisors for the purpose of paying the principal and interest of the said bonds and the same shall, when collected, be preserved in a separate fund for that purpose and no other. All bonds and coupons not paid at maturity shall bear interest at the rate of six per centum per annum from maturity until paid, or until sufficient funds have been deposited at the place of payment, and the said interest shall be appropriated by the board of supervisors out of the penalties and interest collected on delinquent taxes or any other available funds of the district. Any expense incurred in paying said bonds and interest thereon and a reasonable compensation to the bank or trust company for paying same,

shall be paid out of other funds in the hands of the treasurer and collected for the purpose of meeting the expenses of administration. It shall be the duty of said board of supervisors in making the annual tax levy, as heretofore provided, to take into account the maturing bonds and interest on all bonds, and to make provision in advance for the payment thereof. In case the proceeds of the original tax levy made under the provisions of section 17 of this act are not sufficient to pay the principal and interest on all bonds issued, then the board of supervisors shall make such additional levy or levies upon benefits assessed as are necessary for this purpose, and under no circumstances shall any tax levies be made that will in any manner or to any extent impair the security of said bonds or the fund available for the payment of the principal and interest of the same."

Section 46 of the original act provided for a change of "plans of reclamation" and contains the following: "If it should be found at any time that the amount of total tax levied under the provisions of section 17 is insufficient to pay cost of works set out in 'the plan of reclamation' * * * the board of supervisors may make an additional levy to provide funds to complete the work, provided the total of all levies of such tax does not exceed the total amount of benefits."

Chapter 7309 of the Acts of 1917 amended this section, material to the consideration of the question here involved, as follows: "If it should be found at any time that the amount of total tax levied under the provisions of section 17 or that the funds derived from the sale of bonds under the provisions of section 41 are insufficient to pay the cost of works set out in 'the plan of reclamation,' the board of supervisors may make an additional levy to provide funds to complete the work, * * * and if, in their judgment, it seems best, may issue bonds not to exceed the amount of said additional levy."

Section 51 gives a lien upon the lands and all property of the district benefited in favor of the bonds issued under authority of the act. There can be no question but that these first bonds and interest coupons are liens on the lands and other property in the district benefited by the "plan of reclamation" adopted.

This lien existed and had attached at the time of the adoption of chapter 7309 of the Acts of 1917. It is also apparent from a consideration of section 41 of the act that the board of supervisors exhausted the power to

issue bonds conferred by that section when the first bonds were issued. The section conferred only the power after the issue of bonds to levy a tax if the amount of the total assessments made was insufficient to complete the works. Nor does it admit of doubt that, prior to the adoption of said chapter amending section 46, the board of supervisors had no power to issue additional bonds to complete the works set out in "the plan of reclamation."

Can the Legislature displace this existing lien, or incumber the property covered by it with another lien of equal dignity, to share in proceeds derived from the property, pro rata? I think not, to the detriment of the holders of the lien existing at the time of the adoption of the amendment. These being my views, an order will be entered instructing the receiver to pay all past due interest coupons on the bonds issued January 1, 1917, in full, if the amount in his hands is sufficient. If it is not, to pay said coupons, beginning with the coupons first due and unpaid as far as the amount in his hands is sufficient.

The order will also provide that, in case the amount in hand is sufficient to satisfy all the past-due interest coupons on the first bond issue, the balance remaining for payment of interest coupons shall be applied to the past-due interest coupons on the bonds in second and third issues, applying it to the first coupons due.

It will be so ordered.